**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Daniel R. MARTIN, Defendant–Appellee.**

No. 91–3287.

United States Court of Appeals,
Tenth Circuit.

May 26, 1992.

---

Kenneth W. Starr, Sol. Gen., U.S. Dept. of Justice, Washington, D.C., Lee Thompson, U.S. Atty., Gregory G. Hough, Asst. U.S. Atty., Topeka, Kan., for plaintiff-appellant.

Nancy E. Parrish, Topeka, Kan., Eric Stonecipher of Platt & Platt, Junction City, Kan., for defendant-appellee.

Before MOORE, TACHA, and BRORBY, Circuit Judges.

PER CURIAM.

Defendant Daniel R. Martin was convicted, along with co-defendants, James Gish, James Waggoner, and Thomas Evans, of conspiring to possess, with intent to distribute, 500 pounds of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 18 U.S.C. § 2. Defendant's conviction was affirmed on appeal, *see United States v. Gish,* Nos. 89–3006, 89–3007, and 89–3008 (10th Cir. Feb. 28, 1990) (unpublished order and judgment), and his petition for certiorari to the United States Supreme Court was denied. Defendant filed a Motion to Vacate and Set Aside Sentence or, in the Alternative, for a New Trial and Motion for Additional Relief pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel due to a conflict of interest. Following an evidentiary hearing, the district court determined that counsel's dual representation of Defendant and James Gish created an actual conflict of interest which affected counsel's representation of Defendant. The court further concluded that its advisement of Defendant pursuant to Fed.R.Crim.P. 44(c) was inadequate, thereby rendering Defendant's waiver ineffective.[1] In a thorough and well-

---

1. Fed.R.Crim.P. 44(c) provides:

Whenever two or more defendants ... are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

reasoned Memorandum and Order, the district court vacated Defendant's conviction and granted him a new trial. We affirm.[2]

## FACTS

In April 1988, undercover Drug Enforcement Agency (DEA) Agents, Robert Benton and James Woods, met with Defendant, Mr. Evans, and Mr. Gish, in a motel room in Manhattan, Kansas, to discuss the purchase of a large amount of marijuana. During this meeting, which was videotaped, Defendant sampled the marijuana and indicated an interest in making the purchase, but stated he would need to talk to some other people in order to arrange for the money. Defendant does not appear to deny his involvement up to this point.

During the next several weeks, discussions continued between Agent Benton and Mr. Evans regarding the efforts to raise the money. Finally, Mr. Evans indicated to Agent Benton that another man, co-defendant James Waggoner, was interested in the purchase. Telephone records introduced at trial indicate several telephone calls from Mr. Gish to Defendant during this period of time. There was also testimony from the DEA agents implicating someone named "Dan" in the continuing negotiations regarding the drug transaction.[3]

On May 12, 1988, Agent Benton met with Mr. Gish, Mr. Evans, and Mr. Waggoner at a Bennigan's restaurant in Topeka, Kansas, to consummate the deal. Immediately following the exchange of money and drugs, Mr. Gish, Mr. Evans, and Mr. Waggoner were arrested. Defendant voluntarily surrendered after learning that he was included in the indictment.

At trial, Defendant and Mr. Gish were represented by John Humpage. Mr. Waggoner and Mr. Evans each had independent counsel, although it appears to be undisputed that Mr. Humpage was lead counsel and primarily orchestrated the defense. *See*

Appellant's App. B at 68 and 82. At the first pretrial motions' hearing, the district court informed the defendants of the possibility of a conflict of interest emanating from the dual representation. At that time, Defendant, after a short conference with Mr. Humpage, informed the court that the dual representation would be "no problem."

Mr. Humpage testified that he discussed with the defendants the possibility that a conflict could arise if the government offered one of the defendants a "deal" or if one of the defendants insisted on testifying. *Id.* at 83–85. Defendant contends that because of the conflict created by the dual representation, he was precluded from testifying in his own behalf. *See id.* at 13–21. He also testified that Mr. Humpage unilaterally refused an offer of plea negotiation from the DEA. *Id.* at 27. Defendant states that he did not challenge these decisions because Mr. Humpage told him that, if these conflicts arose, he would have to withdraw from the case. In that event, Defendant was afraid he would have to proceed to trial without benefit of counsel. *Id.* at 21.

## STANDARD OF REVIEW

"While we review *de novo* the district court's determination of whether an actual conflict existed, the court's resolution of the underlying facts giving rise to its conclusion is subject to a clearly erroneous standard of review." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 480 (10th Cir.1990) (citing *United States v. Soto Hernandez*, 849 F.2d 1325, 1328–29 (10th Cir.1988)). Because Defendant failed to raise a Sixth Amendment objection at trial, his conviction can only be disturbed upon a showing that an " 'actual conflict of interest adversely affected his lawyer's performance.' " *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir.1990) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)).

---

**2.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

**3.** At the hearing on Defendant's habeas motion, Mr. Humpage testified to the involvement of a person named Dan Hackler. Appellant's App. B at 107.

CONFLICT OF INTEREST

█ In order to establish ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficiencies prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). However, where it is alleged that ineffective assistance was the result of a conflict of interest, there are special considerations that apply. *United States v. Winkle*, 722 F.2d 605, 609 (10th Cir.1983). " '[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.' " *Id.* (quoting *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1719). In order to establish " 'the constitutional predicate' " for a claim of ineffective assistance of counsel, Defendant must " 'show[ ] that his counsel *actively* represented conflicting interests.' " *Soto Hernandez*, 849 F.2d at 1329 (quoting *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719) (emphasis added in *Soto Hernandez*). Once such a showing is made, prejudice will be presumed, and Defendant will be entitled to relief. *See Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19.

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.... [A] conflict may ... prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

*Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). In defining what constitutes a "conflict of interests," the Supreme Court stated that "an actual, relevant conflict of interests [exists] if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." *Cuyler*, 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3. The facts indicate that Defendant found himself in just such a situation as that contemplated by the Supreme Court.

█ "Although multiple representation of co-defendants is not a per se violation of the Sixth Amendment, it does contain great potential for conflicts of interest." *United States v. Burney*, 756 F.2d 787, 790 (10th Cir.1985) (citations omitted). Defendant contends that had he been allowed to testify, he would have testified that he withdrew from the conspiracy immediately following the initial meeting in Manhattan. Defendant claims that his testimony would have established that Mr. Gish's telephone calls to Defendant were answered by his answering machine; that Defendant talked to Mr. Gish only once following the Manhattan meeting for the purpose of informing Mr. Gish that he wanted nothing more to do with the drug transaction; and that the DEA agents' reference to the continuing involvement of someone named "Dan" did not refer to Defendant. However, Defendant claims that because of Mr. Humpage's "united we stand, divided we fall" philosophy of defense, *see* Appellant's App. B at 18 and 85, and his insistence on a joint defense claiming that no conspiracy existed, Defendant was not allowed to testify under threat of standing alone at trial without counsel.

Under the Supreme Court's standard set forth in *Cuyler*, in order to establish an actual conflict, Defendant has the burden of showing specific instances to support his contention of an actual conflict adverse to his interests. *See Burney*, 756 F.2d at 792. Defendant has presented the classic conflict situation in which, in order to reduce the degree of his own culpability, he would have to testify in contravention of his co-defendants' theory of defense. Defendant claims that he had less culpability than the other defendants because he withdrew from the conspiracy. He further contends that Mr. Humpage vehemently opposed his desire to testify because to do so would have negated the remaining defendants' theory of defense that no conspiracy existed. Defendant maintains that Mr. Humpage did not inform him that this created a conflict, or that he could exact his right to have separate counsel.

At the hearing on Defendant's habeas corpus motion, the district court heard tes-

timony of Defendant regarding his discussions with Mr. Humpage, the envisioned substance of his trial testimony, had he been allowed to testify, and his understanding and dread of the consequences of his insistence upon testifying. In addition, the court heard the testimony of Mr. Humpage who maintains that Defendant's testimony was an unnecessary risk because he was able to adequately impeach the testimony of Agent Benton on cross-examination. Mr. Gish and Mr. Rork, trial counsel for Mr. Waggoner, also testified.[4] *See Burger v. Kemp*, 483 U.S. 776, 785, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987) (district judge who is familiar with the local bar, and who heard the testimony of the witnesses, is in best position to evaluate charge of conflict of interest).

It appears clear from the record that Defendant may have been a less culpable participant in the illegal activity. It also appears clear that, had Defendant been able to testify, he may have been able to exculpate himself to some degree. This possibility creates an actual conflict of interest.

Although, once Defendant has established the existence of an actual conflict, prejudice is presumed, the possibility exists that, given an opportunity to present an independent defense, the verdict as to Defendant may have been different. We agree with the district court that Defendant met his burden of establishing the existence of an actual conflict which affected his attorney's performance.

### FED.R.CRIM.P 44(c)

In its Memorandum and Order, the district court concluded that it had not fully complied with the requirements of Fed. R.Crim.P. 44(c), by failing to advise Defendant of his right to separate counsel, and by failing to afford Defendant an opportunity to pose questions regarding the possible consequences of the dual representation. Based upon a scrutiny of its own compliance, the district court found its pretrial advisement to be "cursory in nature

and ... not adequate[ ] [to] address many of the concerns caused by dual representation." Appellant's App. A at 11. The court further expressed its regret for these omissions. *Id.*

We have agreed with other courts' decisions that "a trial court's failure to comply with Rule 44(c) does not, of itself, require reversal of a conviction," and, in order to constitute reversible error, the failure to comply must translate into a denial of the defendant's Sixth Amendment right. *Burney*, 756 F.2d at 791. In light of our determination that an actual conflict existed during trial, and that Defendant's Sixth Amendment right to effective assistance of counsel was vitiated by that conflict, we will give deference to the district court's determination of the inadequacy of its own inquiry and advisement of Defendant prior to trial. *See* Appellant's App. A at 11–12.

Plaintiff argues that Defendant effectively waived his right to a conflict-free trial. "A defendant may waive the right to assistance of counsel unhindered by conflicts of interest." *Burney*, 756 F.2d at 791 n. 2 (citing *Holloway*, 435 U.S. at 483 n. 5, 98 S.Ct. at 1178 n. 5). A waiver must satisfy the constitutional requirements of being knowing, intelligent, and voluntary. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *see also United States v. Dressel*, 742 F.2d 1256, 1258–59 (10th Cir.1984). It was the district court's determination that its failure to advise Defendant of the possible dangers and pitfalls of Mr. Humpage's dual representation and of his right to obtain independent counsel, constituted an insufficient advisement to meet the requirements of Rule 44(c). Therefore the court determined that Defendant's response of "no problem" was not a knowing, intelligent, and voluntary waiver. We discern no clear error in this determination.

### CONCLUSION

In conclusion, after careful review of the record and the parties' briefs, we conclude that Defendant was denied effective assistance due to an active conflict of interest

---

**4.** Mr. Gish's testimony corroborated that of Defendant that Defendant's involvement was less than his. *See* Appellant's App. B at 62. Mr.

Rork supported Mr. Humpage's testimony regarding Mr. Humpage's conflict discussions with Defendant. *Id.* at 150.

844

emanating from his counsel's dual representation. We are also in accord with the district court's determination that its advisement of Defendant was insufficient, thereby rendering Defendant's waiver ineffective. Therefore, the judgment of the United States District Court for the District of Kansas is AFFIRMED.