EBEL, Circuit Judge.
 

 In October of 1979, a jury convicted James M. Edens of felony murder, aggravated robbery, conspiracy, and aiding a felon. After exhausting his state remedies, Edens filed a petition for writ of habeas corpus in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 2254, claiming that he was denied his Sixth Amendment right to counsel. Edens’ counsel also represented a co-defendant. Al
 
 *1112
 
 though Edens did not object to the dual representation at the time of trial, he asserts in this action that his counsel labored under an actual conflict of interest which adversely affected his counsel’s performance, thereby entitling him to a new trial. We agree, and reverse the district court ruling which had denied Edens’ petition.
 
 [1]
 

 BACKGROUND
 

 By a complaint filed January 15, 1979, Edens was charged in the District Court of Sedgwick County, Kansas, with felony murder, robbery, aiding a felony, and illegal possession of a weapon. The charges arose out of the robbery of a pharmacy that occurred on December 15, 1978. Also charged with Edens were codefendants Glendal A. Rider and Clark W. Lemons. The following are the facts of this case as the Supreme Court of Kansas found them in 1981.
 
 See State v. Rider,
 
 229 Kan. 394, 625 P.2d 425, 428-29 (1981).
 

 In late 1978, Rider was residing at Larned State Security Hospital as a result of pleading guilty to previous charges of burglary, robbery, felony murder and other crimes. On December 5, Rider escaped from Larned and fled to Wichita where he established contact with Edens. Edens arranged for Rider to stay at the home of John and Carol Leisek while Rider decided what to do next.
 

 On December 15, Edens, Rider, and Lemons had a conversation in Leisek’s home. Leisek testified that he overheard either Lemons or Edens use the words “robbery” and “Hudson Pharmacy.” After this conversation, Rider stole a 1972 yellow Chevrolet Malibu to use in the robbery of Hudson Pharmacy. Later that evening, Edens drove Rider and Lemons to where the stolen car was parked. Rider and Lemons then drove the car to within one block of the Hudson Pharmacy, and parked the car. The two men entered the pharmacy by walking through a nearby yard.
 

 Rider and Lemons entered the pharmacy brandishing handguns and demanding money and narcotics. The pharmacy phone rang constantly throughout the robbery. As the two men fled, Rider shot at an elderly man the two men encountered as they crossed the yard of a neighboring home. Also, as Rider began to drive away from the curb, another car was passing and the two cars almost collided. This near collision caused an altercation which ultimately resulted in Rider shooting and killing the other driver. Rider testified that he shot the man because it appeared the man had a gun, although it turned out that he had only a knife. Rider and Lemons then fled in the stolen Malibu.
 

 Edens returned to the Leisek residence about 7:30 p.m. Edens and Leisek then drove to the convenience store across the street from the Hudson Pharmacy, where Leisek retrieved a piece of paper from the telephone booth near the store, tore it up and threw it away. After determining that Rider and Lemons were not at the designated pickup location, Edens and Leisek went to Lemons’ house where they joined Lemons and Rider. Two days after the robbery and murder, Rider was apprehended. Shortly thereafter, Lemons was arrested. Edens was arrested approximately thirty (30) days later. Leisek was ultimately given immunity for his testimony.
 

 At trial, Edens and codefendant Lemons were represented jointly by Russell Schultz. Edens was Lemons’ brother-in-law and Lemons’ family paid for the representation of both defendants. At trial Rider testified the
 
 *1113
 
 shooting was in self-defense. Lemons testified that his actions were compelled by his fear of Rider. Edens did not testify or put on evidence in his defense.
 

 In October 1979, Edens was convicted of felony murder, aggravated robbery, conspiracy, and aiding a felon, and was sentenced to life in prison. His conviction was affirmed by the Supreme Court of Kansas on March 18, 1981.
 
 State v. Rider,
 
 229 Kan. 394, 625 P.2d 425 (1981).
 
 [2]
 
 Seven years after the appeal, on July 25, 1988, Edens filed a
 
 pro se
 
 application to vacate his conviction and sentence in the Sedgwick County, Kansas District Court pursuant to K.S.A 60-1507. The court denied relief and Edens appealed. The Kansas Court of Appeals reversed Edens’ conviction of aggravated robbery, but denied his claim of ineffective assistance of counsel based on joint representation.
 
 Edens v. State,
 
 No. 64,111, 796 P.2d 1075 (Kan.Ct.App. Aug. 31, 1990) (unpublished opinion). The Supreme Court of Kansas denied Edens’ Petition for Review on November 13, 1990.
 

 On November 16, 1992, Edens filed an application for writ of habeas corpus in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 2254. Once again Edens raised his claim of ineffective assistance of counsel due to joint representation. On April 1, 1993, the state filed a motion to dismiss pursuant to Fed.R.Civ.P. 9(a), claiming respondents had been prejudiced by Edens’ delay in filing the petition. The state argued that because trial counsel was dead, respondents could not adequately respond. However, the district court denied this motion, holding that Schultz died so soon after Edens’ direct appeal was resolved that it was inevitable Schultz would have been deceased before Kansas could have considered Edens’ collateral attack, no matter how promptly such a challenge had been filed. Hence, Kansas was not prejudiced by Edens’ delay in filing his state habeas action. The state does not appeal that ruling so we do not consider it further.
 

 Edens argues there was a conflict of interest between him and eodefendant Lemons, and that he was deprived of his Sixth Amendment right to effective assistance of counsel when Schultz represented both of them. Because Edens failed to raise this Sixth Amendment objection at trial, the distriet court determined that his conviction could be overturned only if Edens were able to demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.
 
 See United States v. Bowie,
 
 892 F.2d 1494, 1500 (10th Cir.1990).
 

 In an attempt to show specific instances of an actual conflict adverse to his interests,
 
 see U.S. v. Martin,
 
 965 F.2d 839, 842 (10th Cir.1992), Edens cited seven errors: (1) Edens was instructed by his attorney that he could not testify because it would jeopardize Lemons’ defense; (2) Edens’ attorney did not pursue plea negotiations on behalf of Edens once it became clear that there would be no deal for his codefendant, Lemons; (3) Edens’ attorney did not cross-examine codefendant Lemons when it would have been in Edens’ best interest to do so; (4) Edens’ attorney did not cross-examine Leisek when Leisek implicated Edens as the individual who telephoned the pharmacy; (5) Edens’ attorney did not interview or call a witness who would have testified that Leisek was the telephone caller; (6) Edens’ attorney presented no defense for Edens; and (7) Edens’ attorney favored codefendant Lemons because Lemons and his family provided the fee for both Lemons and Edens.
 

 In determining there was no actual conflict, the district court held that although Edens may not have received a perfect trial, he did receive effective assistance of counsel. On September 13, 1994, 1994 WL 541797, the district court issued a final order and judgment dismissing the petition and denying all relief.
 

 DISCUSSION
 

 STANDARD OF REVIEW
 

 Whether multiple representation in a particular case gave rise to a conflict of interest presents a mixed question of law and fact.
 
 Strickland v. Washington,
 
 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). We review
 
 de novo
 
 the district court’s determination of whether an actual conflict existed.
 
 United States v. Martin,
 
 965 F.2d 839, 841 (10th Cir.1992). We review the district court’s resolution of the
 
 *1114
 
 underlying facts for clear error.
 
 Id.
 
 The state court findings of fact made in the course of deciding an ineffectiveness claim are entitled to deference, and are presumed to be correct.
 
 See Strickland,
 
 466 U.S. at 698, 104 S.Ct. at 2070; 28 U.S.C. § 2254.
 

 LEGAL CONTEXT OF THE CLAIM
 

 The Sixth Amendment entitles a defendant in a criminal case to the effective assistance of competent counsel.
 
 Powell v. Alabama,
 
 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The standard for attorney performance is that of “reasonably effective assistance.”
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064. “When a convicted defendant complains of the ineffectiveness of counsel’s assistance, the defendant must show that counsel’s representation fell below an objective standard of reasonableness.”
 
 Id.
 
 at 687-88, 104 S.Ct. at 2064. Reasonableness is evaluated under prevailing professional norms and is considered in light of all the circumstances.
 
 Id.
 
 at 688, 104 S.Ct. at 2064-65.
 

 Courts should be highly deferential in reviewing counsel’s performance, and every effort should be made to “eliminate the distorting effects of hindsight” so that the challenged conduct is evaluated from counsel’s perspective at the time the events took place.
 
 Id.
 
 at 689, 104 S.Ct. at 2065. “[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.”
 
 Id.
 
 (internal quotation marks omitted).
 

 Special considerations apply, however, when a defendant’s counsel has a conflict of interests.
 
 United States v. Winkle,
 
 722 F.2d 605, 609 (10th Cir.1983). Edens bases his claim of ineffective assistance of counsel on his assertion that Schultz, his attorney, had a conflict of interest arising from the joint representation of Edens and his codefendant Lemons. Multiple representation is not
 
 per se
 
 ineffective assistance.
 
 Holloway v. Arkansas,
 
 435 U.S. 475, 482, 98 S.Ct. 1173, 1177-78, 55 L.Ed.2d 426 (1978). We have warned, however, that such representation “should be undertaken very cautiously because of the great potential for conflicts of interest.”
 
 United States v. Dressel,
 
 742 F.2d 1256, 1257-58 (10th Cir.1984);
 
 see also Holloway,
 
 435 U.S. at 490, 98 S.Ct. at 1182 (“[I]n a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to
 
 refrain
 
 from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.”) (emphasis in the original). We have further stated that “[defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial.”
 
 Dressel,
 
 742 F.2d at 1258 (quoting
 
 Cuyler v. Sullivan,
 
 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980)).
 

 Edens failed to raise his Sixth Amendment objection at trial. Therefore, in order to establish his claim now, he must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.
 
 Cuyler v. Sullivan,
 
 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980);
 
 Selsor v. Kaiser,
 
 22 F.3d 1029, 1032 (10th Cir.1994);
 
 United States v. Bowie,
 
 892 F.2d 1494, 1500 (10th Cir.1990). During joint representation, an actual conflict of interest arises if the codefendants’ interests “diverge with respect to a material factual or legal issue or to a course of action.”
 
 Cuyler,
 
 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3;
 
 see also Bowie,
 
 892 F.2d at 1500 (holding that “defense counsel’s performance was adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others ____”). Edens has the burden of showing specific instances to support his claim of actual conflict of interest.
 
 United States v. Martin,
 
 965 F.2d 839, 842 (10th Cir.1992). If Edens is able to show that his counsel actively represented conflicting interests, prejudice will be presumed and he will be entitled to relief.
 
 Id.; Cuyler,
 
 446 U.S. at 349-50, 100 S.Ct. at 1718-19. Having reviewed the record, we believe that Edens has made such a showing here.
 

 
 *1115
 

 EDENS’ ARGUMENTS IN SUPPORT OF HIS CLAIM
 

 Edens argues on appeal that his lawyer labored under a conflict of interest because he failed to investigate and call certain witnesses, failed to seek separate plea negotiations for Edens, failed to cross-examine inculpatory testimony at trial, and failed to present a defense on behalf of Edens and refused to permit Edens to testify in his own defense. In addition, Edens argues he never waived his right to conflict-free counsel.
 

 A. Actual Conflict of Interest
 

 At trial, the State of Kansas did not contend that Edens was present at the scene of the robbery or subsequent murder. The State’s theory regarding Eden’s involvement was that he acted as an aider and abettor. The State claimed that: (1) Edens was present at the table in the Leisek home when conversations took place between Rider, Lemons and Leisek, in which Rider proposed that the men rob a pharmacy; (2) Edens drove Lemons and Rider to a ear that was later used in commission of the robbery and subsequent murder; and (3) Edens served as a lookout for Rider and Lemons by phoning the pharmacy from a pay phone across the street during the robbery.
 
 [3]
 

 The evidence presented by the State in support of its ease against Edens consisted of testimony from Leisek, Rider and Lemons. Lemons, although acknowledging that Edens said he wanted no part of the robbery, testified that Edens was present at Leisek’s home during conversations which focused on planning the robbery, that Edens drove him and Rider to the car later used in the robbery, and that Edens was supposed to pick Lemons and Rider up after the robbery. Leisek received immunity from prosecution in exchange for his testimony, and his testimony indicated that Edens had been the lookout and that he believed he heard Edens participate in the planning conversation at Leisek’s home.
 
 [4]
 
 Leisek also testified that he and Edens retrieved a piece of paper from the phone booth across the street from the pharmacy sometime after the robbery that Leisek thought contained the phone number to the pharmacy. In addition, Leisek claimed that Edens told him that Rider and Lemons were not at the location where Edens was supposed to pick them up. Finally, Rider testified that while he was at the Leisek’s house, he told Lemons and Edens of his plans to rob the pharmacy and that both men refused to help. While acknowledging that Edens commented that the robbery was unwise and a foolish thing to do, Rider nevertheless implicated Edens in the crime by stating that Edens had given him and Lemons a ride to the car Rider had obtained earlier and had told Rider to be careful. In March of 1981, the Kansas Supreme Court ruled that the testimony of Leisek, Rider and Lemons was sufficient to convict Edens of aiding and abetting.
 
 [5]
 

 Schultz apparently provided two defense strategies for codefendant Lemons: (1) Schultz contended that Lemons was compelled by Rider to take part in the robbery; and (2) Schultz attacked the pharmacy employee’s identification of Lemons as one of
 
 *1116
 
 the perpetrators. Schultz, however, made no opening statements on behalf of Edens and essentially called no witnesses on his behalf.
 
 [6]
 
 On appeal, Edens argues “Schultz was burdened by [a] conflict of interest to such an extent that he was unable to present any discernible defense” on Edens’ behalf. We agree.
 

 The only way Edens could have avoided criminal liability in this case would have been for him to have presented the defense that he had not participated in any way in the robbery. A successful effort on Edens’ behalf, however, necessarily would have damaged his codefendant, Lemons. That is, Edens’ only defense was in conflict with the defense presented for Lemons. For example, in order to establish that Edens had not given Rider and Lemons a ride to the car used in the robbery, as both Rider and Lemons testified, Schultz would have had to cross-examine and impeach his own client Lemons. Likewise, in order to establish that Edens had not participated in the conspiratorial conversations at Leisek’s house, Schultz would have had to let Edens testify that he had refused to participate in the robbery. Such testimony would have tended to refute Lemons’ claim that Rider used compulsion to secure Lemons’ participation.
 

 The record reflects that the conflict between Edens’ and Lemons’ defenses was consistently resolved in favor of Lemons and at Edens’ expense. Schultz never articulated what defense, if any, was contemplated for Edens and he put on no evidence on Edens’ behalf. Edens was not permitted to testify and Schultz never cross-examined Lemons or Rider with respect to their inculpatory testimony that Edens had provided a ride to the car used in the robbery.
 
 [7]
 
 Furthermore, the district court’s conclusion that Schultz’ cross-examination of Leisek was “thorough” is unsupported by the record. Leisek testified to the planning conversation that was held in his home, but Schultz failed to probe Leisek concerning Leisek’s inability to identify whether the speaker at the table discussing the robbery was Lemons or Edens.
 
 [8]
 
 Schultz’ conflict here was clear. Any effort by Schultz to prove that Edens was not the one who used the words “robbery” and “Hudson Pharmacy” during that conversation necessarily would have established that those words were spoken by Lemons, his other client. In order for Schultz adequately to cross-examine Leisek on behalf of either of his clients, he would unavoidably implicate the other.
 

 Even the trial prosecutor in this case had concerns that there might be a conflict in Schultz’ joint representation of both Lemons and Edens. Trial prosecutor Steve Robinson testified at the state court’s post conviction hearing that he became concerned about the possibility of inconsistent defenses when he learned the defense of compulsion was being presented on behalf of Lemons, but not Edens. The record in this case also suggests that Schultz was aware of the conflict and simply failed to address it. Lemons testified at the state court hearing that Schultz told him that it would be advantageous to have Edens as a codefendant because Edens could not then be used as a state’s witness against Lemons.
 

 The district court below characterized Schultz’ decision not to allow Edens to testify as proper trial strategy. The court agreed with the Kansas Court of Appeals’ conclusion that Edens testimony was not necessary because Lemons’ testimony was “generally exculpatory.” This conclusion, however, ig
 
 *1117
 
 ñores the fact that Lemons testified that Edens drove Lemons and Rider to the car used in the robbery. Regardless of the rest of Lemons testimony with respect to Edens, this testimony clearly implicated Edens and provided the evidence by which a jury could conclude that Edens had assisted the other two defendants in the execution of the robbery. Although Edens at the post conviction hearing denied that he drove the car, he was prevented from testifying to that effect at trial by his counsel and Schultz never cross-examined Lemons on Edens’ behalf. In fact, at the state court hearing Lemons testified that Schultz told him Edens was not going to be permitted to testify in part because he feared what Edens might say. All of the other defendants testified to advance their own particular defenses. Only Edens, who also wanted to testify to say he simply was not involved, was told by his counsel, Schultz, that he could not testify. Schultz told Edens to just “go along with everything.” Lemons’ testimony implicating Edens created a conflict of interest for Schultz and Schultz resolved the conflict in Lemons’ favor.
 

 Edens also argues that Schultz’ failure to pursue separate plea negotiations on his behalf was motivated by a conflict of interest. Trial prosecutor Robinson testified that Schultz approached him regarding a possible plea bargain, offering only a joint deal for Lemons and Rider. Robinson testified that Schultz never distinguished between Lemons and Edens when discussing a possible plea agreement. The record also reflects that Schultz did not pursue separate plea negotiations for Edens when it became clear the government was not interested in a joint plea agreement for Lemons and Edens. Settlement negotiations on Edens’ behalf alone, however, might have produced a plea offer from the government. In exchange for a favorable plea, Edens apparently could have provided valuable testimony undermining Lemons’ defense. Edens had witnessed the conspiratorial conversation that took place between Lemons and Rider and arguably could have testified that Lemons was not forced to participate in the robbery, contrary to Lemons’ claim. It appears that Edens was the least culpable defendant in this case and his observations regarding his more culpable codefendant Lemons might have been offered in exchange for a plea agreement with the government. No such effort was made on Edens’ behalf because such an arrangement would have been in direct conflict with Lemons’ defense.
 
 See Baty v. Balkcom,
 
 661 F.2d 391, 397 (5th Cir.1981),
 
 cert. denied,
 
 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982) (holding that defense counsel suffered from an actual conflict of interest in representing two codefendants because had the attorney not been facing a conflict of interest, he might have been able to negotiate a plea agreement on one defendant’s behalf in return for becoming a prosecution witness against the eodefendant).
 

 Finally, Edens contends that Schultz failed to investigate and pursue Kay Thacker to testify on Edens’ behalf because her testimony would have harmed Lemons. After Carol and John Leisek testified at the preliminary hearing, Edens told Schultz that part of their testimony was false and that he could prove it by calling as a witness Carol Leisek’s sister, Kay Thacker. The Leiseks had testified that no one besides them was present during the conversations involving Rider, Edens and Lemons. Edens wanted Thacker to testify because she had been present the day of the conversation. Schultz, however, refused to call Thacker to testify on Edens’ behalf because he felt it would not help Edens and that it would hurt Lemons. Schultz gave no explanation for his assertion that Thacker’s testimony would hurt Lemons.
 
 [9]
 
 The record does, however, show that Thacker’s testimony could have been helpful to Edens’ defense. Although her memory of the events after ten years was uncertain, Thacker testified at the state posteonvietion hearing that she remembered that Carol Leisek had told her that it was Leisek who was to signal to the robbers from a phone across the street, not Edens. Thacker also testified that in May, 1989, she told an investigator with the public defender’s office that Carol had told her that Leisek had taken part by making the phone calls. Therefore, notwithstanding Thacker’s uncertain memory, it is clear she may have been helpful to Edens’ defense and should have at least been inter
 
 *1118
 
 viewed by Schultz. Schultz’ decision not to pursue her testimony on Edens’ behalf based upon his concern for Lemons’ defense is evidence of an actual conflict of interest.
 

 B. Waiver
 

 Even assuming an actual conflict, Respondent-Appellee argues that Edens knowingly, intelligently and voluntarily waived his Sixth Amendment right to conflict-free representation.
 
 See Holloway,
 
 435 U.S. at 483 n. 5, 98 S.Ct. at 1178 n. 5 (noting that “a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests”). ‘Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.”
 
 Brady v. United States,
 
 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). In reviewing the Respondent’s argument based upon waiver, we must indulge every reasonable presumption against the waiver of fundamental rights.
 
 Glasser v. United States,
 
 315 U.S. 60, 70, 62 S.Ct. 457, 464-65, 86 L.Ed. 680 (1942). After review of the record before us, we conclude Edens did not waive his Sixth Amendment right to conflict-free representation.
 

 Edens testified that he was told by Schultz that they would have to have a hearing before the trial judge because the judge was concerned about a conflict. At the pretrial hearing Schultz stated that the Lemons’ family was paying him to represent both Lemons and Edens. He told the court that both men understood that the jury would have to reach a decision on each count and that the possibility existed that those counts in which they were charged together could be “a subject of separate decisions” and that they could possibly receive separate sentences. Edens and Lemons both acknowledged that they had been so advised.
 

 There was no discussion during the hearing, however, of the risks associated with Schultz’ dual representation and there was no inquiry by the court on this matter. The limited colloquy that occurred during the pretrial hearing does not reflect that Edens was at all apprised of the possibility of conflicts arising from inconsistent defenses. The fact that Edens understood, for example, that he might receive a different sentence from Lemons does not demonstrate that he understood that his defense could possibly conflict with Lemons’ defense at some point during trial, presenting a conflict of interest for his attorney. Nor is it clear that Edens understood that such a conflict had the potential for undermining his defense. Nor does the record reflect that Edens ever understood that Schultz’ dual representation might impair his ability to negotiate a separate plea agreement. On the record before us, there is simply no basis for us to conclude that Edens knowingly and intelligently assumed the risks associated with Schultz’ representation of both Edens and Lemons.
 

 CONCLUSION
 

 Based upon the forgoing discussion, we conclude that Schultz labored under an actual conflict of interest which adversely affected his representation of Edens, and that Edens did not waive his Sixth Amendment right to conflict-free counsel. We therefore REVERSE the district court’s order and REMAND the case to the district court with instructions that the district court grant Edens habeas relief unless the state chooses to retry him within a reasonable time.
 

 [1]
 

 . Edens filed a notice of appeal on October 12, 1994. The district court granted a certificate of probable cause on October 17, 1994, and permitted Edens to proceed in forma pauperis on appeal.
 

 On April 24, 1996 the President signed into law significant habeas corpus amendments (Pub.L. No. 104-132, 110 Stat. 1214). These amendments were enacted as Title I of the "Anti-terrorism and Effective Death Penalty Act of 1996” (formerly S. 735). The amendments affect 28 U.S.C. §§ 2244, 2253, 2254, 2255, Appellate Rule 22, and 21 U.S.C. § 848(q). The amendments also create a new chapter 154 in Title 28, which provides special habeas corpus procedures in capital cases. The only effective date provision specified within Title I of the habeas corpus amendments is under the special death penalty litigation procedures, which states that those provisions shall apply to cases pending on or after enactment.
 
 See
 
 § 107(c). Edens filed his petition pursuant to 28 U.S.C. § 2254 in the district court on November 16, 1992; he filed his notice of appeal on October 12, 1994; and a certificate of probable cause was issued pursuant to Rule 22 on October 17, 1994, all well before the new habeas corpus amendments were enacted. Under these facts we conclude that the new law does not apply to this case.
 

 [2]
 

 . Edens’ trial counsel, Russel Schultz, died in October 1982.
 

 [3]
 

 . The men allegedly had agreed that if the phone were to stop ringing at the pharmacy during the robbery, Lemons and Rider were to leave the scene immediately.
 

 [4]
 

 . Leisek testified with uncertainty that he heard "either Lemons or Edens” use the words “robbery” and "Hudson Pharmacy” that afternoon.
 
 State v. Rider,
 
 229 Kan. 394, 625 P.2d 425, 429 (1981).
 

 [5]
 

 . The Kansas Supreme Court held the following:
 

 The trial court properly ruled there was sufficient evidence to overrule the motion for judgement of acquittal as to Edens on the charges of conspiracy, aggravated robbery, and felony murder. John Leisek's testimony established a basis for the jury to reasonably conclude that Edens, Rider, and Lemons had a mutual understanding or tacit agreement for the accomplishment of the Hudson Pharmacy robbery.... There was also competent evidence that Edens intentionally participated in the conspiracy to further the success of the robbery.... There were sufficient facts upon which the jury could conclude Edens telephoned the pharmacy and kept the phone ringing during the robbery, and attempted to pick up Rider and Lemons after the robbery.... The jury could reasonably conclude Edens willfully participated as an aider and abettor, to further the success of the robbery, thus supporting his conviction as a principal for the offense of aggravated robbery and felony murder.
 

 State v. Rider,
 
 229 Kan. 394, 625 P.2d 425, 434 (1981).
 

 [6]
 

 . Schultz did recall John Leisek purportedly as Edens’ witness. However, Schultz only elicited from Leisek the fact that he had not seen Rider threaten Lemons or Edens.
 

 [7]
 

 . Appellees incorrectly assert that Edens failed to claim in the district court that Schultz did not adequately cross-examine Rider, and that Edens raises this issue for the first time on appeal. Edens' memorandum in support of his petition in the district court clearly raised the issue of Schultz’ failure to cross-examining Rider. R.O.A., Vol. I, Doc. 2, at 10. Thus, there is no bar to our review of the issue here.
 

 [8]
 

 .Appellees assert, as they did before the district court, that Edens’ claim that Schultz failed to adequately cross-examine Leisek was not raised in the state court proceedings and thus should not be reviewed for the first time in a federal habeas corpus action.
 
 See Rose v. Lundy,
 
 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (holding that a district court must dismiss habeas petitions containing any claims that have not been exhausted in state court). We agree, however, with the district court's conclusion that this claim was adequately raised in the state court proceedings and thus can be reviewed on federal habeas.
 
 See
 
 Edens’ Petition in state post conviction proceeding, No. 88-C-2606.
 

 [9]
 

 . The record reflects that Schultz made this assertion without even interviewing Kay Thacker.