**Solomon DUKES, Petitioner,**

v.

**J.R. HUNT, et al., Respondents.**

**No. 5:96–HC–398–F2.**

United States District Court,
E.D. North Carolina,
Western Division.

Dec. 26, 1996.

Solomon Dukes, Maury, NC, pro se.

Teresa L. Harris, Assoc. Atty. Gen., N.C. Dept. of Justice, Raleigh, NC, for J.R. Hunt, Jr., Calvin Duncan.

## ORDER

JAMES C. FOX, Chief Judge.

This matter is before the court on petitioner's Objections to the Magistrate Judge's December 10, 1996, Memorandum and Recommendation (M & R). The defendant filed no objections.

The court has conducted a careful independent review of the record herein, including the entire state court record, the petition, the respondents' motion for summary judgment, the M & R, and petitioner's objection thereto [1], and has concluded that the M & R is correct and in accordance with the law. Consequently, the court hereby ADOPTS the December 10, 1996, Memorandum and Recommendation. It is ORDERED that the respondents' Motion for Summary Judgment is ALLOWED, and this action is DISMISSED.

SO ORDERED.

## MEMORANDUM AND RECOMMENDATION

DENSON, United States Magistrate Judge.

Petitioner, a state inmate, filed this habeas corpus petition under 28 U.S.C. § 2254 on May 13, 1996. The State of North Carolina answered the petition and simultaneously moved for summary judgment. Petitioner has filed a document entitled "Motion in Opposition to State's Summary Judgment," which the court will treat as a response. The State's motion for summary judgment is therefore ripe for disposition.

---

1. Petitioner's "objection" is a one-paragraph form document which refers to "additional sheet(s) which are attached and incorporated by reference." No additional sheets are attached, and petitioner has made no specific objection to the M & R. The form objection merely states that the petitioner "lodges objection to all of the Findings and Recommendations entered by the Magistrate Judge that are unfavorable to the petitioner."

## I.

On November 22, 1991, a jury of the Superior Court of Cumberland County, North Carolina, convicted Petitioner of the second degree murder of his wife. He was sentenced to fifteen years imprisonment. Before trial, Petitioner moved to suppress two statements that he had given on the morning of his arrest. The trial judge held a hearing on these motions, and, after considering the testimony of seven witnesses, denied both by written order. Among the facts that the trial judge found at the suppression hearing and the evidence presented at trial were the following.

Petitioner and his wife, Audrea Dukes, lived in separate trailers in the Parkwood Mobile Home Park in Fayetteville, North Carolina. Ms. Dukes lived with the couple's infant son and remained in regular contact with the Petitioner despite their separation. On the evening of January 13, 1990, while borrowing a heater from Ms. Dukes, Petitioner told her that he planned to stay home that evening and play cards with a friend. However, Petitioner and his friend, Marcus Virgil, instead went to a club in Raeford, North Carolina. Petitioner and Virgil returned to the trailer park some time between 3:00 and 4:00 a.m. on the morning of January 14, along with a woman, Audrey Sanders, that Virgil met at the club. Petitioner allowed Virgil and Sanders to stay in his trailer, telling them that he would go to his wife's trailer.

Soon thereafter, Deborah Davis, a neighbor and friend of Ms. Dukes, heard a scream that she identified as Audrea Dukes' voice. She went outside and saw Petitioner exiting his wife's trailer holding his son. After Petitioner did not reply to Davis's queries, Davis looked in the open door of Ms. Dukes's trailer and saw her lying on her back on the floor. Petitioner told Davis not to touch his wife. Davis then saw Petitioner bend over his wife's body, kiss her on the side of her face, and say he was sorry for "doing it."

Members of the Fayetteville Police Department were dispatched to the trailer park at approximately 4:30 a.m. on January 14, after receiving reports of a stabbing. When he arrived on the scene, Officer Felton Moore recognized Petitioner from previous visits to the trailer park to respond to reports of domestic disputes between Petitioner and Ms. Dukes. Officer Moore observed Petitioner holding a baby, walking around, and sobbing in the general area of his wife's trailer. Officer Moore spoke with Petitioner and escorted him back to his (Petitioner's) trailer, which was some 50 yards away from his wife's trailer.

Once there, Officer Moore asked Officer James Thompson to remain in the trailer with Petitioner, and he instructed Officer Thompson not to allow Petitioner to leave the trailer, change clothes, or wash his hands. Officer Moore then left the trailer. After watching him for some time, and without any knowledge of the events that had transpired, Officer Thompson asked Petitioner what happened. Petitioner responded that "his girlfriend was hurt and she was going to the hospital, that they were taking the baby from him, and that the police think he did it." (Order Denying Motion to Suppress, Jan. 29, 1992, at 5).

Shortly after Officer Moore returned to Petitioner's trailer, Petitioner was placed under arrest and escorted to the Fayetteville Law Enforcement Center, where he was placed in an interview room. Investigator Jeffrey Stafford, who had already visited the scene, entered the interview room and began to advise Petitioner of his *Miranda* rights by reading from a pre-printed form. Before Stafford finished, Petitioner began crying inconsolably. Stafford stopped reading and attempted to calm Petitioner. He began reading again, but Petitioner continued to cry and call out his son's name. During Stafford's second attempt at calming Petitioner, Petitioner raised his head and stated, "I ... I stabbed her." He then asked for a cigarette, which he was given, and was allowed to take a nap. Stafford returned one hour later, awoke Petitioner, and read him the full *Miranda* form. Petitioner initialed a waiver form and told Stafford that upon returning from Raeford, he went to his wife's trailer and found her on the floor, already stabbed.

After being convicted and sentenced, Petitioner appealed the denial of his motions to suppress and the admission of the investigat-

ing officers' opinion testimony that Petitioner was faking his emotional outbursts at the scene of the crime and at the Law Enforcement Center. The North Carolina Court of Appeals affirmed Petitioner's conviction. *State v. Dukes,* 110 N.C.App. 695, 431 S.E.2d 209 (1993). Petitioner then filed a petition for writ of habeas corpus in this court on August 19, 1994, which was dismissed on April 14, 1995, for failure to exhaust state remedies. After Petitioner's petition to the North Carolina Supreme Court was denied, this court allowed refiling of his habeas petition on May 13, 1996, and service of the petition on the State prompted the instant motion for summary judgment.

## II.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 250, 106 S.Ct. at 2511. The moving party can bear its burden either by presenting affirmative evidence, or by demonstrating that the non-movant's evidence is insufficient to establish its claim. *Celotex Corp.,* 477 U.S. at 331, 106 S.Ct. at 2556–57 (Brennan, J., dissenting). A trial judge faced with a summary judgment motion "must ask

himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Before addressing Petitioner's claims, the court must establish the proper standard of review in light of the recent amendments to the habeas corpus statutes by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the "Act"). Section 104(3) of the Act added a new section affecting the federal scope of review of state court legal rulings:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. July 1996). Because Petitioner filed this action after the date on which the President signed the law, § 2254(d), as amended, determines this court's scope of review of the North Carolina Court of Appeal's legal rulings.[1]

Although the Fourth Circuit has not yet interpreted the language of this new statute, other circuits have addressed its application. The Seventh Circuit has held that, by allowing a federal court to reverse a State court decision "contrary to" federal law, the law leaves federal courts "free to express an independent opinion on all legal issues in the case," albeit at the same time restricting

---

1. The court therefore need not address the problem of retroactivity that has already produced a split in the circuits. *Compare Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc) (allowing retroactive application of § 2254(d)), *petition for cert. filed* (No. 96–6298) (Oct. 10, 1996), *with Boria v. Keane,* 90 F.3d 36 (2d Cir.1996) (refusing to apply Act retroactively), *petition for cert. filed,* 65 U.S.L.W. 3342 (Oct. 11, 1996) *and Edens v. Hannigan,* 87 F.3d 1109, 1112 n. 1 (10th Cir.1996) (same).

them to applying Supreme Court decisions. *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996) (en banc), *petition for cert. filed* (No. 96–6298) (Oct. 10, 1996).

The Fifth Circuit has held that the phrase "unreasonable application" speaks to mixed questions of law and fact. *Drinkard v. Johnson*, 97 F.3d 751, 767 (5th Cir.1996). Such issues call for a more restrained approach. "[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored." *Lindh*, 96 F.3d at 871. A federal court cannot substitute its own judgment for a reasonable State court ruling because "the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions." *Id.*

■ The Act also moved former 28 U.S.C. § 2254(d), which sets forth the standard for reviewing a State court's findings of fact, and amended it to read as follows:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1) (West Supp. July 1996). Because Petitioner has brought forth no evidence, much less clear and convincing evidence, to indicate that any factual determination in the North Carolina courts was incorrect, those findings bind the court in its examination of this habeas corpus petition.

■ Therefore, the applicable standard of review in this case is as follows. If, on the basis of the facts in the State court record, this court determines that the North Carolina courts' rulings were not contrary to, or an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court, and that the State court proceedings did not result in a decision based on an unreasonable determination of the facts in light of the available

evidence, Respondents are entitled to summary judgment.

## III.

Petitioner presents three issues, each of which was rejected by the North Carolina Court of Appeals. First, he challenges the trial court's denial of his motion to suppress the statement he made to Officer Thompson while waiting in his trailer. Second, he argues that the denial of his motion to suppress his statement to Investigator Stafford at the Law Enforcement Center was erroneous. Third, he contends that the trial judge erred by allowing the investigating officers to testify that they believed Petitioner was faking the grief he expressed at the trailer park and during his interview with Investigator Stafford.

### A.

Petitioner claims that the admission of his response to Officer Thompson violated his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda*, the Supreme Court held that the Fifth Amendment right against self-incrimination forbids the introduction of a suspect's responses to custodial interrogation by a law enforcement officer unless the suspect is first informed of certain rights. *Id.* at 478–79, 86 S.Ct. at 1630. *Miranda* claims are fully reviewable in habeas corpus proceedings. *Withrow v. Williams*, 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993).

The North Carolina Court of Appeals held that Petitioner was in custody because he felt "compelled to stay" due to Officer Moore's instructions to Officer Thompson not to let Petitioner leave his trailer, change clothes, or wash his hands. *State v. Dukes*, 110 N.C.App. 695, 702–03, 431 S.E.2d 209, 214 (1993). The Court of Appeals also assumed, without expressly holding, that Officer Thompson's question to Petitioner constituted interrogation. *Id.*

■ Interrogation "under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response

from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). As a police officer dispatched to the scene of a stabbing and instructed to guard a man wearing bloody clothing and not allow him to change clothing or wash his hands, Officer Thompson should have known that any question regarding the events underlying the investigation would be likely to draw a potentially incriminating response. He should have known not to ask such a question without first advising Petitioner of his *Miranda* rights. Officer Thompson's question should therefore be characterized as interrogation.

■ The Court of Appeals next held that there was *no constitutional violation* because Petitioner's statement was not inculpatory. However, "no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory,' " as *Miranda* is a "prerequisite[ ] to the admissibility of *any* statement made by a defendant" in response to custodial interrogation. *Miranda,* 384 U.S. at 476–77, 86 S.Ct. at 1629 (emphasis added). Thus, Petitioner's statement to Officer Thompson was erroneously admitted because he had not been previously informed of his *Miranda* rights.

■ However, the mere presence of constitutional error does not compel the issuance of a writ of habeas corpus. As a "trial error," [2] the admission of Petitioner's statement to Officer Thompson is inconsequential if it constitutes harmless error. Trial error is considered harmless in federal habeas corpus cases unless it " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Typically, the error must cause the petitioner to suffer "actual prejudice." *Id.*

The North Carolina Court of Appeals concluded that, assuming constitutional error, the admission of Petitioner's statement to Officer Thompson was harmless beyond a reasonable doubt. *Dukes,* 110 N.C.App. at 704, 431 S.E.2d at 214. That standard is more stringent than necessary in these proceedings. *Brecht,* 507 U.S. at 623, 113 S.Ct. at 1714 (rejecting the "harmless error beyond a reasonable doubt" standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), because "application of a less onerous harmless-error standard on habeas promotes the considerations underlying our habeas jurisprudence").

■ Moreover, the North Carolina court's conclusion is amply supported by the evidence introduced at trial. There was evidence before the jury that shortly after Ms. Dukes screamed, Petitioner left her trailer carrying his son, and Ms. Dukes' was seen lying on her back on the floor of her trailer. (Tr., at 94–103). There was also evidence that Petitioner and his son had blood on their clothing at that time. (Tr., at 259–60, 293, 384). The investigating officers discovered a butcher knife covered in blood in the sink of Ms. Dukes trailer, (Tr., at 400), which was consistent with the size and shape of Ms. Dukes' wounds. (Tr., at 717–18). Finally, Petitioner stated, "I ... I stabbed her" as Stafford was attempting to read him his *Miranda* rights. (Tr., at 612).

Petitioner did not say, "I did it" in response to Officer Thompson's query. He said, "they think I did it," which is not a direct admission of guilt. It is doubtful that the jury, faced with the abundance of evidence linking Petitioner to his wife's murder, substantially relied on this statement as grounds for its verdict. The trial court's erroneous admission of this statement did not have a substantial or injurious effect on the jury's verdict, and is therefore harmless error. Respondents are entitled to summary judgment on the claim that the admission of Petitioner's statement to Officer Thompson requires reversing his conviction.

#### B.

■ Petitioner's second claim also alleges a violation of his *Miranda* rights, this time

---

**2.** A trial error is to be distinguished from a "structural error," such as deprivation of right to counsel, which mandates automatic reversal because it "infect[s] the entire trial process." *Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993).

by the admission of his statement, "I ... I stabbed her." The North Carolina Court of Appeals held that it was not error to introduce this declaration at trial because Petitioner spoke voluntarily, rather than in response to interrogation. *Dukes,* 110 N.C.App. at 704–05, 431 S.E.2d at 215. The court cited in support of its conclusion, among other things, the trial court's finding of fact during the hearing on Petitioner's motion to suppress " 'that Investigator Stafford, during the advising of the Defendant of his rights at 7:54 a.m., observed the Defendant lift up his head and say, "I stabbed her." ' " *Id.*

As Petitioner has not rebutted the presumption of correctness, the trial court's findings of fact bind this court. 28 U.S.C. § 2254(e)(1). However, they are not a complete description of the events in the interview room, as reflected by Investigator Stafford's testimony at the suppression hearing and at trial. Stafford testified at the suppression hearing that before Petitioner said "I stabbed her," he attempted to calm him down so that he could read him his *Miranda* rights. He acknowledged that in so doing, he said "You need to be strong," "You need to understand your rights before we talk to you," and "There is a reason for everything, and we just need to talk to you about what happened." (Tr., vol. 4, Stafford Cross, at 45–48). He also admitted telling Petitioner "You're just hurting yourself by acting like this." (*Id.* at 53). At trial, Stafford testified that he also told Petitioner, "we knew what happened but we didn't know why and ... we needed him to understand his rights so that we could ... interview him and find out exactly what happened." (Tr., at 609).

If Petitioner had blurted out "I stabbed her" while Stafford was merely reading the *Miranda* rights form, his statement would unquestionably be a voluntary statement admissible in evidence, and not a response to police interrogation. *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630. However, interrogation may consist of "either express questioning or its functional equivalent," *i.e.,* "any words or actions ... that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

The North Carolina courts' conclusion that Petitioner was not subject to interrogation at the time he made this statement was not unreasonable application of *Innis* and other relevant precedent. Stafford's comments did not reasonably require an immediate response from Petitioner. He was merely attempting to pacify Petitioner so that he could finish apprising him of his *Miranda* rights. After Petitioner said "I stabbed her," Stafford allowed him to sleep for one hour, upon which he returned and was able to read Petitioner his rights and obtain Petitioner's consent to an interview. (Tr., vol. 4, Stafford Direct, at 27–32). Only then did Stafford begin asking questions to which a response was reasonably required. Of course, as Petitioner had by then knowingly and voluntarily waived his *Miranda* rights, answers to these questions were fully admissible.

In short, the comments Investigator Stafford made in his effort to calm Petitioner before Petitioner stated, "I ... I stabbed her," were not reasonably likely to elicit an incriminating response. Petitioner's statement was therefore not a response to custodial interrogation admitted in violation of *Miranda,* and Respondents are entitled to summary judgment on Petitioner's second claim.

## C.

■ Finally, Petitioner claims that the trial judge erred by admitting opinion testimony from the investigating officers that he was faking his emotional outbursts. However, Petitioner has not identified a federal basis for relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

Viewing Petitioner's claim with extreme indulgence, he at best contends that admission of this testimony violated his due pro-

cess rights by depriving him of a fair trial. As stated above, an abundance of evidence was present on which the jury could base its conviction, including eyewitnesses who placed him at the scene, blood on his clothing, and his confession to Investigator Stafford. Moreover, the testimony·of Deborah Davis and Audrey Sanders, to which no objection was offered on these grounds, indicated that they also believed that Petitioner was faking his emotions. Even assuming, *arguendo,* that the admission of the opinion testimony was an error under State law, it did not " 'so infuse[ ] the trial with unfairness as to deny due process of law.'" *Id.* at 75, 112 S.Ct. at 484 (quoting *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941)). Accordingly, Respondents are entitled to summary judgment on Petitioner's third claim as well.

### IV.

In conclusion, the undersigned RECOMMENDS that Respondents' Motion for Summary Judgment be ALLOWED in full.

SO RECOMMENDED, this the 10th day of December, 1996.