Stacey **BARKER**, Petitioner,

v.

Joan **YUKINS**, et al., **Respondents.**

No. 97–CV–71292–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 1998.

Stuart G. Friedman, Ann Arbor, MI, for Petitioner.

K. Davison Hunter, Asst. Atty. Gen., Lansing, MI, for Respondents.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DISMISSING PLAINTIFF'S HABEAS CORPUS ACTION

ROSEN, District Judge.

This matter having come before the Court on the December 4, 1997 Report and Recommendation of United States Magistrate Judge Paul J. Komives recommending that the Court deny Plaintiff's petition for a writ of habeas corpus, and that this case, accordingly, be dismissed; and Petitioner having timely filed Objections to the Magistrate's Report and Recommendation; and the Court having reviewed the Magistrate Judge's Report and Recommendation, Petitioner's Objections thereto, and the Court's file of this action and having concluded that, for the reasons stated in the Report and Recommendation, Plaintiff's petition for habeas corpus relief should be denied; and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that the Magistrate Judge's Report and Recommendation of December 4, 1997 be, and hereby is, adopted by this Court.

IT IS FURTHER ORDERED that, for the reasons set forth in the Magistrate Judge's Report and Recommendation, Plaintiff's petition for habeas corpus relief be, and hereby is DENIED and the above-captioned case, therefore, is DISMISSED.

### REPORT AND RECOMMENDATION

KOMIVES, United States Magistrate Judge.

I. *RECOMMENDATION:* The Court should deny petitioner's application for the writ of habeas corpus.

II. *REPORT:*

A. *Procedural History*

1. Petitioner Stacey Barker is a state prisoner, currently confined at Scott Correctional Facility in Plymouth, Michigan.[1]

2. On November 17, 1987, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316, following a jury trial in Oakland County Circuit Court. On December 4, 1987, she was sentenced to a mandatory term of nonparolable life imprisonment.

3. Petitioner appealed as of right to the Michigan Court of Appeals, raising the following claims:

 I. WAS DEFENDANT DENIED EQUAL PROTECTION AND HER RIGHT TO AN IMPARTIAL JURY WHEN THE PROSECUTOR USED A PEREMPTORY CHALLENGE TO STRIKE A BLACK VENIRE PERSON FROM THE

---

1. Petitioner has been temporarily transferred to the Huron Valley Center, a facility under the control of the Michigan Department of Mental Health. James Haveman, Jr., Director of the Department of Mental Health, has been joined by petitioner as a respondent in this action.

JURY, AND THE TRIAL COURT ERRED IN UPHOLDING THE PROSECUTOR'S IMPERMISSIBLE EXERCISE OF THAT CHALLENGE?

II. DID THE COURT DENY DEFENDANT A FAIR TRIAL WHEN IT DECLINED A DEFENSE REQUEST TO INSTRUCT THE JURY THAT A PERSON IS ENTITLED TO USE DEADLY FORCE IN DEFENDING HERSELF AGAINST WHAT SHE HONESTLY BELIEVES IS THE DANGER OF SEXUAL ASSAULT?

III. DID THE TRIAL COURT ABUSE ITS DISCRETION AND DENY DEFENDANT A FAIR TRIAL WHEN IT ADMITTED INTO EVIDENCE OVER DEFENSE OBJECTION A FOURTEEN MINUTE VIDEO TAPE OF THE CRIME SCENE AND THE BODY OF THE DECEDENT WHEN THE TAPE WAS HIGHLY INFLAMMATORY AND UNNECESSARY TO ILLUMINATE A MATERIAL ISSUE IN THE CASE?

IV. DID THE TRIAL COURT ABUSE ITS DISCRETION AND DENY DEFENDANT A FAIR TRIAL WHEN IT INTRODUCED INTO EVIDENCE TWO COLOR PHOTOGRAPHS OF THE DECEASED WHICH WERE NOT RELEVANT TO A DISPUTED MATERIAL ISSUE AND FAR MORE PREJUDICIAL THAN PROBATIVE?

The court of appeals found no merit in any of these claims and affirmed petitioner's conviction in a published opinion. *People v. Barker*, 179 Mich.App. 702, 446 N.W.2d 549 (1989) (per curiam). One judge separately concurred, concluding that the trial court's refusal to specifically instruct the jury that petitioner was entitled to use deadly force to resist a sexual assault was erroneous, but that such error was harmless. *Barker*, 179 Mich.App. at 711, 446 N.W.2d at 552 (Kelly, J., concurring).

4. Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court granted the application for leave to appeal, "limited to the issue whether the trial judge erred reversibly by refusing to instruct the jury that defendant was entitled to use deadly force to resist sexual assault." *People v. Barker*, 435 Mich. 867, 457 N.W.2d 691 (1990). The Supreme Court affirmed the court of appeals decision on different grounds, concluding that although the trial court erred in failing to give the requested instruction, the error was harmless. *People v. Barker*, 437 Mich. 161, 468 N.W.2d 492 (1991). One justice dissented, concluding that the error was not harmless. *Barker*, 437 Mich. at 165–74, 468 N.W.2d at 494–95 (Levin, J., dissenting).

5. Petitioner, represented by counsel, filed the instant petition for habeas corpus on March 27, 1997. She raises two grounds for writ of habeas corpus:

I. THE MICHIGAN SUPREME COURT DEPRIVED MS. BARKER OF THE CONSTITUTIONAL RIGHT TO A TRIAL BY JURY (TOGETHER WITH ALL OF ITS ATTENDANT RIGHTS) WHERE THE SUPREME COURT UPHELD HER CONVICTION DESPITE AN ADMITTEDLY DEFECTIVE JURY INSTRUCTION BECAUSE THE COURT BELIEVED THE STATE'S WITNESSES OVER THE DEFENSE WITNESSES.

II. MS. BARKER WAS DENIED EQUAL PROTECTION (AND HER RIGHT TO AN IMPARTIAL JURY) WHEN THE PROSECUTOR USED A PEREMPTORY CHALLENGE TO STRIKE A BLACK VENIREPERSON FROM THE JURY, AND THE TRIAL COURT ERRED IN UPHOLDING THE PROSECUTOR'S IMPERMISSIBLE EXERCISE OF THAT CHALLENGE.

6. Respondents filed their answer on September 18, 1997. They contend that petition-

er's first claim is unexhausted and therefore barred by the procedural default doctrine, and that petitioner's second claim does not entitle her to the writ of habeas corpus.

## B. *Exhaustion of State Remedies*

 Respondents argue that petitioner has failed to exhaust her first claim in the state courts by "fairly presenting" the claim to the Michigan Supreme Court. Generally, a habeas petitioner must exhaust her state law remedies before seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor,* 404 U.S. 270, 275–278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). "A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1516 (6th Cir.1993). In general, a petitioner has satisfied the exhaustion requirement when he has presented his claim to the state's highest court. *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir.1990).

 If a petition contains both exhausted and unexhausted claims, the general rule is to dismiss such mixed petitions for exhaustion of all claims. *Rose v. Lundy,* 455 U.S. 509, 519, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, a petitioner's failure to exhaust state remedies does not deprive the court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). A federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir.1991); *Prather v. Rees,* 822 F.2d 1418, 1421–1422 (6th Cir.1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. *Cain,* 947 F.2d at 820.

 In both the Michigan Court of Appeals and the Michigan Supreme Court, petitioner raised a claim that the trial court's failure to instruct the jury that she was entitled to use lethal force to resist a sexual assault deprived her of a fair trial. However, respondent argues that these claims were formulated differently than petitioner's habeas claim, which asserts that petitioner was deprived of her constitutional right to trial by jury by the Supreme Court's decision affirming her conviction. In support of their position, respondents rely on *Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam). However, the Court should conclude that *Duncan* does not support respondent's position.

In *Duncan,* as respondents correctly note, the Court did state that "mere similarity of claims is insufficient to exhaust." *Duncan,* 513 U.S. at 366. However, the import of this passage is understood only in the context of the case. In *Duncan,* the petitioner had raised a state law evidentiary claim in the state court system, without asserting that the error deprived him of a fair trial under the Due Process Clause. He then filed a habeas petition in federal court asserting such a constitutional violation. Noting that the purpose of the exhaustion requirement is "to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *id.* at 365 (internal quotation omitted), the Court reasoned that the petitioner's state law evidentiary claim, although similar to his constitutional claim, was insufficient:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Id.* at 366.

In this case, the state courts were alerted to the fact that petitioner was raising a claim under the United States Constitution. In her brief to the Michigan Supreme Court, for example, petitioner asserted that she had

been denied her right to due process under the constitution because the jury had not been properly instructed, citing to *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) and U.S. CONST. amends. V, XIV. *See* Br. in Supp. of Application for Leave to Appeal, at 19 (docket entry # 21).[2] Although phrased somewhat differently in her statement of the issues, petitioner's current claim is essentially the same: that she has a constitutional right to trial by jury under the constitution which includes the right to have the jury properly instructed on legally recognized defenses. *See* Pet. for Writ. of Habeas Corpus, at 29.

■ Contrary to respondents' assertion, there is nothing in *Duncan* which suggests that there must be an exact identity of language between petitioner's state court brief and her federal habeas petition. Indeed, there is nothing in *Duncan* which even suggests that there must be an exact identity between the cases and other authorities relied on in the state court brief and the federal petition. Rather, all that is required is that the federal constitutional issue be fairly identified and presented to the state court in such a way that the state court has an opportunity to be alerted to the existence of a federal constitutional question and have the opportunity to pass on the question. Because the state courts were given the opportunity here, the Court should conclude that petitioner has properly exhausted her first habeas claim, and should consider the merits of the claim. *See Johnston v. Love*, 940 F.Supp. 738, 760 (E.D.Pa.1996), *aff'd*, 118 F.3d 1576 (3d Cir.), *cert. denied sub nom.*

*Johnston v. Love*, —— U.S. ——, 118 S.Ct. 425, 139 L.Ed.2d 326 (1997); *Sanabria v. Morton*, 934 F.Supp. 138, 144 (D.N.J.1996) (claim was properly exhausted under *Duncan* where the state cited federal constitutional case law in its brief opposing petitioner's direct appeal, because the government's brief alerted the state court of the constitutional question and gave the state court the opportunity to pass on that question); *Keating v. Hood*, 922 F.Supp. 1482, 1492 (C.D.Cal.1996); *cf. Duncan*, 513 U.S. at 366–37 (Souter, J., joined by Ginsburg and Breyer, JJ., concurring in the judgment) (concurring only on the basis that the petitioner had raised only a state law claim, and not a federal claim).[3]

## C. *Standard of Review*

### 1. *Applicability of the Antiterrorism and Effective Death Penalty Act*

■ As an initial matter, the Court must determine what standard of review applies to petitioner's claims. Because petitioner's application was filed after April 26, 1996, it appears that her petition should be governed by the provisions of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 26, 1996). However, petitioner argues that this statute should not apply to her petition because her state criminal appeals were completed prior to the passage of the AEDPA. Petitioner raises essentially two arguments: (1) the AEDPA does not apply under the retroactivity test established in *Landgraf v. USI Film Prods., Inc.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229

---

2. In her state supreme court brief, petitioner also cited *In re Silverthorn*, 73 Mich. 644, 41 N.W. 834 (1889), in which the court held:

> Before the citizen should be deprived of his liberty, and subjected to such a degrading penalty, he should be permitted to avail himself of all his constitutional rights, which include "due process of law" in criminal cases, and which has not yet been conferred upon these officers. He is not only entitled to have the facts of his case passed upon by a jury, but to have the jury properly instructed concerning the law applicable to the facts by a court competent to give such instructions.

*Id.* at 647, 41 N.W. at 835. This, too, is sufficient to constitute a fair presentation of the federal constitutional issue to the state courts. *See Le-*

*vine*, 986 F.2d at 1516 ("A petitioner 'fairly presents' his claim to the state courts by citing ... state decisions employing a constitutional analysis[.]").

3. The fact that the Michigan appellate courts did not address petitioner's claims as constitutional claims is irrelevant. As the Supreme Court has noted, "[i]t is too obvious to merit extended discussion that whether the exhaustion requirement ... has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court[.]" *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989).

(1994); and (2) "enforcing this provision would unlawfully delegate the constitutional adjudication power of this Court (and even the United States Supreme Court) to state courts." Pet. for Writ of Habeas Corpus, at 36. Accordingly, petitioner contends, her petition should be analyzed under the presumably more lenient pre-AEDPA standard of review. However, because each of petitioner's arguments are without merit, the Court should analyze petitioner's application under the standards codified by the AEDPA.

### a. Retroactivity Under Landgraf

In *Landgraf,* the Court clarified the standard for determining whether a newly enacted statute applies to cases pending at the time of its enactment. In determining the effect of an intervening change in the law, the court must reconcile the general rule that "'a court is to apply the law in effect at the time of it renders its decision,'" *Landgraf,* 511 U.S. at 264 (quoting *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)), with the sometime conflicting rule that "'[r]etroactivity is not favored in the law.'" *Id.* (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)) (alteration in original). Thus, the first inquiry is whether Congress has explicitly made clear its intent to apply the statute to conduct antedating the enactment of the statute. If Congress has, the statute applies to cases pending at the time of its enactment. If Congress has not, the inquiry shifts to a determination of whether application of the statute to a pending case would have "retrospective," or "retroactive," effect. If the application of the statute would have retroactive effect, then the statutory presumption against retroactivity will bar application of the statute to a pending case. However, if application of the statute would not have a retroactive effect, then the rule requiring a court to apply the law in effect at the time it renders its decision controls, and the statute will be applied. *See Landgraf,* 511 U.S. at 268–274, 280–81, 114 S.Ct. at 1499–1502, 1505.

However, read careful, *Landgraf* does not apply here because petitioner's case was not pending at the time the AEDPA was enacted. This conclusion is supported the Court's recent decision in *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In *Lindh,* the Supreme Court held that the provisions of the AEDPA applicable to non-capital cases do not apply to habeas petitions which were pending at the time the AEDPA was enacted based. Applying *Landgraf,* the Court resolved the issue at the first inquiry, concluding, by negative implication, that an express provision applying the capital-case amendments to pending petitions reveals that Congress's silence with respect to the non-capital case amendments indicates Congress's intent that the non-capital provisions do not apply to pending petitions. The Court reasoned: "We read this provision of § 107(c) [of the AEDPA], expressly applying chapter 154 [the capital case amendments] to all cases pending at enactment, as indicating implicitly that the amendments to chapter 153 [non-capital cases] were assumed and meant to apply to the general run of habeas cases *only when those cases had been filed after the date of the Act." Lindh,* —— U.S. at ——, 117 S.Ct. at 2063 (emphasis added). According to the Court, therefore, "[t]he statute reveals Congress's intent to apply the amendments to chapter 153 only to *such cases as were filed after the statute's enactment." Id.* at ——, 117 S.Ct. at 2063 (emphasis added).

Or, put another way, under the first *Landgraf* inquiry Congress clearly expressed its intent to apply the AEDPA to all habeas applications filed in the federal courts after the statute's enactment, as evidenced by the language of *Lindh* quoted above. Indeed, post-*Lindh* cases applying the AEDPA support this conclusion. *See, e.g., Pratt v. United States,* 129 F.3d 54, 58 (1st Cir.1997) ("Here, moreover, we know on the best of authority that Congress intended that AEDPA apply to all section 2255 petitions filed after its effective date[.]") (citing *Lindh*); *Calderon v. United States Dist. Ct. for the Cent. Dist. of Cal.,* 127 F.3d 782, 785–86 (9th Cir.1997) (AEDPA applies to petitions filed after the statute's enactment); *Holman v. Gilmore,* 126 F.3d 876, 880 (7th Cir.1997) (AEDPA applies to petition filed after April 24, 1996); *Chapdelaine v. United States,* No.

97–160P, 1997 WL 446465, at *4 (D.R.I. July 28, 1997) ("Applying the Supreme Court's reasoning [in *Lindh* ] to the motion presently before this court requires the conclusion that Congress intended the § 2255 time-limitation provision set forth in the AEDPA amendments to chapter 153 to, at minimum, apply to all motions filed on or after the AEDPA's enactment date[.]"); *Jenkins v. Cain,* 977 F.Supp. 1255, 1257–58 (W.D.La.1997) (holding that statute of limitations provision of 28 U.S.C. § 2244 applies to petition filed after enactment of AEDPA, reasoning that "[i]t is difficult to evade the language in *Lindh* that chapter 153 applies to 'cases filed after the Act became effective.' ").

This conclusion is also supported by another Supreme Court case applying the AEDPA. In *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Court "uncritically applied AEDPA['s restriction on second habeas petitions] to a prisoner's second habeas petition even though the prisoner had filed his first petition prior to AEDPA's enactment." *Pratt,* 129 F.3d 54, 58 (citing *Felker,* 518 U.S. at 656–57, 116 S.Ct. at 2336–37). Based on this language from *Felker,* a number of courts have applied the AEDPA's restrictions on second petitions to second petitions filed after the statute's effective date, even though the first petition was filed prior to enactment. *See, e.g., In re Medina,* 109 F.3d 1556, 1561–62 (11th Cir.1997); *Roldan v. United States,* 96 F.3d 1013, 1014 (7th Cir.1996); *Hatch v. Oklahoma,* 92 F.3d 1012, 1014 (10th Cir.1996). This conclusion is directly applicable here: the AEDPA applies to petitioner's application even though the state trial and appeals process underlying her conviction occurred prior to the AEDPA's effective date. Accordingly, the Court should conclude that *Landgraf* does not compel application of the pre-AEDPA standards to petitioner's claims.

### b. Adjudicatory Powers of the Federal Courts

■ Likewise, the Court should reject petitioner's claim that the standard of review provision of the AEDPA, codified at 28 U.S.C. § 2254(d), intrudes on the adjudicatory powers of the federal courts by "requir[ing] a federal judge to defer to a state judge's interpretation of federal constitutional law[.]" Pet. for Writ of Habeas Corpus, at 37. Essentially, petitioner claims that the AEDPA is unconstitutional because it violates principles of separation of powers. Petitioner's argument fails for two reasons.

First, contrary to her assertion, the standard of review provision of the AEDPA does not require the federal courts to defer to state courts' interpretations of federal law. The relevant provision provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under subsection (1), although the federal court is required to give some deference to the state court's *application* of federal law to the facts of the particular case, it is still the province of the federal courts, namely the Supreme Court, to determine *what* is federal law. Contrary to petitioner's assertion, under the amended § 2254(d) it remains the province and duty of the federal courts to say what the law is, *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), and the Supreme Court clearly remains the "ultimate interpreter of the Constitution." *Baker v. Carr,* 369 U.S. 186, 211, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).[4]

---

**4.** Indeed, even if the AEDPA allowed the state court to be the "final arbiter" of federal law with respect to a petitioner's application for habeas relief under § 2254(d), the Supreme Court still remains the "final arbiter" of federal law with respect to a petitioner's underlying petition, because the petitioner may seek direct review of his conviction in the Supreme Court, *see* 28 U.S.C.

Further, the AEDPA does not represent an impermissible delegation of the federal courts' authority to the state courts. Unlike the cases cited by petitioner, in which the Court has found that Congress may not delegate authority to determine the constitutionality of various governmental actions to executive departments or agencies, the AEDPA does not delegate any authority to the state courts beyond that which they already possess. Rather, § 2254(d) merely addresses the scope of the federal courts' authority to issue the writ of habeas corpus. As the Court explained in *Felker:* "[W]e have long recognized that 'the power to award the writ by any of the courts of the United States must be given by written law,' and we have likewise recognized that judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker,* 518 U.S. at 664, 116 S.Ct. at 2340 (citations omitted) (quoting, respectively, *Ex Parte Bollman,* 8 U.S. (4 Cranch) 75, 94, 2 L.Ed. 554 (1807) and *Lonchar v. Thomas,* 517 U.S. 314, 323, 116 S.Ct. 1293, 1298, 134 L.Ed.2d 440 (1996)).

Indeed, the amended § 2254(d) quite simply "is consistent with the settled view that elected judges of our state courts are fully competent to decide federal constitutional issues, and that their decisions must be respected by federal district judges in processing habeas corpus applications[.]" *Swain v. Pressley,* 430 U.S. 372, 383, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977); *see also, Stone v. Powell,* 428 U.S. 465, 493–94 n. 35, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several states."); *cf. Allen v. McCurry,* 449 U.S. 90, 105, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (recognizing ability of state courts to pass on federal constitutional issues); *Moore v. Sims,* 442 U.S. 415, 430, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (same); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 610–11, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (same). In short,

> [i]n passing § 2254(d), Congress has not usurped the Court's judicial function. Under the Act, federal courts are still able

and required to exercise independent judgment to determine whether the state court's decision was contrary to, or involved an unreasonable application of, federal law. If the state court's application of federal law was unreasonable, the federal court has the power to grant the writ. Therefore, the Act does not violate Article III.

*Duncan v. Calderon,* 946 F.Supp. 805, 813 (C.D.Cal.1996); *see also, Lindh v. Murphy,* 96 F.3d 856, 868–69 (7th Cir.1996) (section § 2254(d) does not violate Article III), *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Perez v. Marshall,* 946 F.Supp. 1521, 1531 (S.D.Cal.1996) (same), *aff'd,* 121 F.3d 716 (9th Cir.1997). Accordingly, the Court should conclude that petitioner's application for the writ of habeas corpus is governed by the standard of review codified at 28 U.S.C. § 2254(d), as amended by the AEDPA.

#### 2. *Standard of Review Under § 2254(d)*

As noted above, amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■■■ Subsection (d)(1) deals with habeas challenges based on errors of law or mixed questions of law and fact, while subsection (d)(2) applies to challenges based on purely

---

§ 1257, or may file an original application for writ of habeas corpus under 28 U.S.C. § 2241,

*see Felker,* 518 U.S. at 658–61, 116 S.Ct. at 2338–39.

factual errors. *See Gomez v. Acevedo,* 106 F.3d 192, 199 & n. 7 (7th Cir.1997); *Dukes v. Hunt,* 952 F.Supp. 276, 281 (E.D.N.C.1996); *Thomas v. Gramley,* 951 F.Supp. 1338, 1341–42 (N.D.Ill.1996). Under subsection (d)(1), a petitioner will be entitled to relief only if the state court's decision of a purely legal issue was contrary to clearly established law as decided by the Supreme Court, or if the court's application of that law to the facts was unreasonable. *See Gomez,* 106 F.3d at 199; *Drinkard v. Johnson,* 97 F.3d 751, 768–69 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997); *Thomas,* 951 F.Supp. at 1341–42. This standard is more deferential than the pre-AEDPA standard. *Stone v. Farley,* 86 F.3d 712, 716 n. 3 (7th Cir.1996). As the Fifth Circuit recently explained, with respect to purely legal determinations the question is whether the state "court correctly determined the law applicable to [petitioner]'s claim[.]" *Drinkard,* 97 F.3d at 768. With respect to the state court's application of the law to the facts, the Fifth Circuit explained:

> This "unreasonable application" standard of review of a state court decision must mean more than that a federal court may grant habeas relief based on its simple disagreement with the state court decision; this would amount to nothing more than a *de novo* review. The use of the word "unreasonable" in formulating this restrictive standard of review implicitly denotes that federal courts must respect all *reasonable* decisions of state courts. Thus, given the statutory language, and in light of the legislative history that unequivocally establishes that Congress meant to enact deferential standards, we hold that an application of law to facts is *unreasonable* only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect. In other words, we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.

*Drinkard,* 97 F.3d at 768–69; *accord Lindh v. Murphy,* 96 F.3d 856, 871 (7th Cir.1996) (en banc) ("[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a 'reasonable' decision by the state court must be honored. By posing the question whether the state court's treatment was 'unreasonable,' § 2254(d)(1) requires federal courts to take into account the care with which the state court considered the subject."), *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[5]

Similarly, under subsection (d)(2) a federal court reviewing purely factual determinations may grant the writ of habeas corpus only where the state court's determinations are "unreasonable." Although no case has directly discussed what constitutes an "unreasonable" factual determination, the "unreasonable application" language of subsection (d)(1) is analogous. Thus, a factual determination will be unreasonable only where it "is so clearly incorrect that it would not be debatable among reasonable jurists." *Drinkard,* 97 F.3d at 768–69; *see also,* 28 U.S.C. § 2254(e)(1) (formerly § 2254(d) state court findings of fact are presumed to be correct, and this presumption may only be rebutted by clear and convincing evidence).

### D. Analysis of Petitioner's Habeas Claims

#### 1. Failure to Instruct Claim

At trial, petitioner presented a self-defense theory to the jury. Under her version, she killed the victim while resisting his attempted sexual assault. The trial court gave a general self-defense instruction to the jury, but refused to specifically instruct the jury that a person may use deadly force to resist a sexual assault, as required by Michigan law. *See People v. Heflin,* 434 Mich. 482, 456 N.W.2d 10 (1990). On petitioner's appeal, the Michigan Supreme Court found that "the trial court erred when it failed to instruct the jury correctly with regard to the use of deadly force[.]" *Barker,* 437 Mich. at

---

5. In examining whether the state court's decision was one of the types specified in subsection (d)(1) for granting the writ, the Court "remain[s] free to look beyond those cases and reasons relied upon by the state court opinion in determining whether the standards for issuance of the writ set forth in § 2254(d)(1) have been met." *Thomas,* 951 F.Supp. at 1342.

164, 468 N.W.2d at 493. However, the court went on to hold that the error was harmless:

> The decedent was eighty-one years old, walked with a cane, and was described as being unsteady on his feet. The defendant is in her early twenties, five feet, seven inches tall, and weighs 170 pounds.
>
> The evidence thoroughly contradicted the defendant's version of how and why she killed the elderly and infirm victim. We agree with Judge Marilyn Kelly's concurring opinion in the Court of Appeals that, on this record, no reasonable juror would have believed the defendant's claim of self-defense. Defendant bludgeoned the deceased ten times and stabbed him thirty-two times. Some of the wounds appeared to have been inflicted while he attempted to crawl away. No reasonable juror could have believed such force was necessary to prevent rape by the enfeebled deceased.

*Barker*, 437 Mich. at 164, 468 N.W.2d at 494 (internal quotation marks and alterations omitted) (quoting *People v. Barker*, 179 Mich. App. 702, 711, 446 N.W.2d 549, 552 (1989) (Kelly, J., concurring)).[6] Thus, the question before this Court under § 2254(d) is whether the Michigan Supreme Court's conclusion that the instructional error was harmless is contrary to, or involved an unreasonable application of, established federal law as determined by the United States Supreme Court.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court held that constitutional errors in a trial do not necessarily require reversal, and the Court since *Chapman* has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Subsequently, in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Court explicitly applied the harmless error analysis in the context of erroneous jury instructions. *See id.* at 576–82. *Rose* also necessarily commands that the harmless error analysis is applicable where the alleged error in jury instructions was the failure to give a requested instruction. *See, e.g., Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir.1990) (applying harmless error analysis to failure to instruct claim without explicit discussion of *Rose*); *Blazic v. Henderson*, 900 F.2d 534, 542–43 (2d Cir.1990) (same); *Richie v. Gomez*, No. C–95–3300 MHP, 1996 WL 440672, at *2 (N.D.Cal. July 26, 1996) (*Rose* requires harmless error analysis in context of failure to give requested instruction).[7]

---

6. Justice Levin dissented from the court's opinion, concluding:

> It cannot properly be said that no reasonable juror would have believed that Madsen [the victim] made a sexual assault on Barker. Nor can it properly be said that an instruction that Barker could use deadly force to prevent oral sexual advances—Barker's lawyer spoke of Madsen seeking to kick Barker's body—may not have resulted in acquittal, conviction of a lesser offense, or another mistrial because all twelve jurors were unable to agree on a verdict.

*Barker*, 437 Mich. at 166, 468 N.W.2d at 495 (Levin, J., dissenting).

7. Prior to the enactment of the AEDPA, a federal court reviewing jury instructions (including an alleged failure to instruct) did not, precisely, analyze the issue under the harmless error test. Rather, prior to the AEDPA, the courts held: "A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. The error must so infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth

amendment [sic]." *Tyler v. Wyrick*, 635 F.2d 752, 753 (8th Cir.1980) (citation omitted); *accord Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir.1988). Further, in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Court held that a federal habeas court does not apply the *Chapman* harmless error analysis, which asks whether the error was harmless beyond a reasonable doubt, but rather the harmless error analysis announced in *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), which asks whether the error had a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 635–37.

Under the AEDPA, however, a federal habeas court no longer asks these questions. Rather, the court's inquiry is whether (a) the state court applied the correct harmless error standard for direct review—*i.e.*, the *Chapman* harmless error standard; and (b) the state court's application of that standard was reasonable in light of the facts of the case. *See* 28 U.S.C. § 2254(d)(1); *see also, Jeffries v. Wood*, 114 F.3d 1484, 1500–1501 (9th Cir.) (AEDPA, if applied, would not preclude habeas relief where the state court failed to apply

In petitioner's case, the Michigan Supreme Court used the correct legal standard for the harmless error analysis. Although the court did not cite to decisions of the United States Supreme Court, it noted that, on the record, "no reasonable juror would have believed the defendant's claim of self-defense." *Barker,* 437 Mich. at 164, 468 N.W.2d at 494. This accurately portrays the *Chapman*-type harmless error analysis, and thus the Michigan Supreme Court's decision was not, on its face, "contrary to ... clearly established Federal law" under § 2254(d)(1).

Turning to the second prong of the § 2254(d)(1) inquiry, it cannot be said that the Michigan Supreme Court's application of the harmless error test was "unreasonable." As noted by the court's majority opinion, and the concurring opinion of Judge Kelly in the court of appeals, the evidence at trial showed that the victim was 81 years old, suffered from various physical ailments, and relied on a cane to walk. In contrast, petitioner was in her early twenties, was five feet, seven inches tall, and weighed 170 pounds. Further, the evidence showed that the victim had been bludgeoned with a blunt object ten times and had been stabbed thirty two times. *Barker,* 437 Mich. at 162–63, 164, 468 N.W.2d at 493, 494; *see also, Barker,* 179 Mich.App. at 711, 446 N.W.2d at 552 (Kelly, J., concurring). The only contradictory evidence was the tes-

timony of petitioner herself. *See Barker,* 437 Mich. at 170–74, 468 N.W.2d at 496–98 (Levin, J., dissenting). Further, although the jury was not specifically instructed that petitioner could use deadly force to resist an imminent sexual assault, the jury was instructed that petitioner "could defend herself from death or 'serious bodily harm' with force, 'even to the extent of taking a human life if necessary.'" *Barker,* 437 Mich. at 163, 468 N.W.2d at 493.. Based on these circumstances, six of the seven state court judges to consider the harmless error issue found the failure to give the instruction to be harmless.[8] Based on the evidence before the trial court, and the fact that the jury was instructed on self-defense generally, it cannot be said by this Court that the decision of these judges was an "unreasonable application" of the *Chapman* harmless error analysis. *See Carter v. Johnson,* 110 F.3d 1098, 1108 (5th Cir.1997) ("If reasonable jurists could disagree, the state court decision on a mixed question of law and fact is not 'an unreasonable application of federal law,' and thus the decision is immune from federal habeas attack."); *Drinkard,* 97 F.3d at 769 (Under § 2254(d)(1), "we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists."). Accordingly, the Court should deny the application for writ of habeas corpus on this ground.[9]

*Chapman* harmless error standard, rendering its decision contrary to clearly established federal law), *petition for cert. denied,* —— U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997); *Miller v. Page,* No. 96 C 4293, 1997 WL 684988, at *4 (N.D.Ill. Oct.30, 1997) ("This court cannot say that the Illinois Appellate Court was unreasonable in concluding that the constitutional error it found was harmless. Therefore, the issue cannot be the basis for granting petitioner habeas relief."); *United States ex rel. Ayala v. Washington,* No. 97 C 2864, 1997 WL 627648, at *3 (N.D.Ill. Sept.30, 1997).

8. The harmless error issue was considered only by Judge Kelly in the court of appeals. Further, in the supreme court, Justice Mallett did not participate in the decision. Thus, one court of appeals judge and six supreme court justices considered the harmless error issue. Of these, only Justice Levin found that the failure to give the requested instruction was not harmless error.

9. Petitioner phrases her failure to instruct claim in terms of her right to a trial by ·jury. In essence, petitioner claims that, by engaging in

the harmless error inquiry, the Michigan Supreme Court usurped the jury's role by weighing the evidence in her case. However, the dissent in *Rose* raised a similar argument, which was rejected by the majority:

> We agree that the determination of guilt or innocence, according to the standard of proof required by *Winship* and its progeny, is for the jury rather than the court. Harmless-error analysis addresses a different question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome? This question applies [to a wide variety of trial errors]. All of these errors alter the terms under which the jury considered the defendant's guilt or innocence, and therefore theoretically impair the defendant's interest in having a jury decide his case. The dissent's argument—that the Sixth Amendment forbids a reviewing court to decide the impact of a trial error on the outcome—logically implies that all such errors are immune from harmless-error analysis. Yet this Court repeatedly has held to the contrary.

### 2. Batson Claim

█ Petitioner next claims that the prosecutor impermissibly exercised a peremptory challenge to exclude a black venireperson solely on the basis of her race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the state courts erred in finding that the prosecutor's proffered reason for striking the venireperson was not based on impermissible considerations of race. In *Batson*, the Court held that "[a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race[.]" *Batson*, 476 U.S. at 89 (citation and internal quotation omitted).[10] In evaluating *Batson* claims, a court must follow a three-step process:

First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (citations omitted) (citing *Batson*, 476 U.S. at 96–98). Further, as pre-AEDPA decisions have noted, "[t]he trial court's decision on the ultimate question of

discriminatory intent represents a finding of fact that is entitled to 'great deference on appeal.'" *Kelly v. Withrow*, 25 F.3d 363, 367 (6th Cir.1994) (quoting *Hernandez*, 500 U.S. at 364). Thus, under the AEDPA, a state court's determination that a prosecutor's use of peremptory challenges was not motivated by discrimination will be upheld, and a petitioner will not be entitled to habeas relief, unless it can be said that the state court's decision amounted to an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).[11]

█ After setting forth the proper legal standard under *Batson*, the Michigan Court of Appeals summarized and analyzed petitioner's claim as follows:

Turning to the case at bar, defendant objected to the prosecutor's using a peremptory challenge to excuse one of two black venirepersons. The prosecutor explained that he struck the one black juror because of her similarity to defendant in terms of age and status. The prosecutor further explained that he also dismissed two white jurors for similar reasons. Finally, the prosecutor explained that he did not peremptorily excuse the other black juror on the panel because she was older than defendant and had a good job. That is, the black juror who remained was not similar to defendant in age and status. Thereafter, the trial court indicated that it was satisfied with the prosecutor's explanation and ruled that the peremptory challenge was properly exercise.

*Rose*, 478 U.S. at 582 n. 11.

**10.** *Batson* has been extended to prohibit gender-based peremptory challenges, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Further, *Batson* has been extended to prohibit impermissible race or gender based challenges by criminal defendants, *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) and by parties in civil cases, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

**11.** There is no question that the Michigan Court of Appeals applied *Batson* in analyzing petitioner's claim, and thus the court applied the correct

legal standard under § 2254(d)(1). *See Barker*, 179 Mich.App. at 705–06, 446 N.W.2d at 550–51. It may be that the state court's determination that the prosecutor's use of preemptory challenges was not discriminatorily motivated constitutes an application of this legal standard to the facts—that is, a mixed question of law and fact—under § 2254(d)(1) rather than a purely factual determination under § 2254(d)(2). However, as discussed above, *supra* part C.2, the "unreasonable application" language of subsection (d)(1) and the "unreasonable determination" language of (d)(2) essentially establishe the same standard. Thus, the result is the same whether petitioner's claim is analyzed under either subsection.

In this case, the prosecutor offered a racially neutral explanation for exercising his peremptory challenge to strike one of the two black venirepersons. The trial court accepted this explanation, concluding that the prosecutor was properly motivated in exercising the peremptory challenge. We must give great deference to that determination.... In this case, we are satisfied with the prosecutor's explanation that he did not exercise his peremptory challenge with respect to this juror merely because the juror was black.

*Barker*, 179 Mich.App. at 706–07, 446 N.W.2d at 551.

Neither this decision, nor the original finding of fact made by the trial court, was unreasonable. First, the fact that the prosecutor did not strike another black venireperson, while not dispositive, is a relevant consideration in assessing the prosecutor's motives. *See United States v. Williamson*, 53 F.3d 1500, 1510 (10th Cir.1995); *United States v. Marin*, 7 F.3d 679, 686 n. 4 (7th Cir.1993); *United States v. Bishop*, 959 F.2d 820, 827 (9th Cir.1992); *United States v. Grandison*, 885 F.2d 143, 147 (4th Cir.1989).

Further, the prosecutor "articulate[d] a neutral explanation related to the particular case to be tried," *Batson*, 476 U.S. at 98, as required under *Batson*. The prosecutor struck the black venireperson (and a similar white venireperson) based on her age, education, and "status," presumably meaning either marital or socioeconomic status. These are permissible considerations for the exercise of a peremptory challenge. *See, e.g., Marin*, 7 F.3d at 686–87 ("The attainment of a certain educational level has been accepted by numerous circuits as a race-neutral criterion for exercising a peremptory challenge

under the *Batson* mandate, and, as far as we can determine, has been rejected by none."); *United States v. Mixon*, 977 F.2d 921, 923 (5th Cir.1992) (education and employment experience permissible considerations); *United States v. Lane*, 866 F.2d 103, 105–06 (4th Cir.1989) (education permissible consideration); *United States v. Nicholson*, 885 F.2d 481, 482 (8th Cir.1989) (age, marital status, and employment experience permissible considerations); *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988) (age and employment experience permissible considerations); *United States v. Harrell*, 847 F.2d 138, 139 (4th Cir.1988) (education and employment experience permissible considerations); *United States v. Clemons*, 843 F.2d 741, 748–49 (3d Cir.1988) (age and marital status permissible considerations).[12] Accordingly, the determination by the state court that the prosecutor's peremptory challenge was not racially motivated was not unreasonable under § 2254(d)(2), and petitioner is not entitled to the writ of habeas corpus on this ground.

### E. Conclusion

In view of the foregoing, the Court should conclude that petitioner has properly exhausted her habeas claims. The Court should also conclude that her claims are properly analyzed under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act. Applying the standard of § 2254(d), the Court should conclude that petitioner is not entitled to the writ of habeas corpus because she has not shown that the decisions of the Michigan Court of Appeals and Michigan Supreme Courts were contrary to, or involved an unreasonable application of, established federal law, nor that they involved an unreasonable determination of fact.

---

**12.** Relying on Justice Marshall's concurring opinion in *Batson*, petitioner asserts that age may be an impermissible basis on which to exercise a peremptory challenge. *See Batson*, 476 U.S. at 106 (Marshall, J., concurring) ("[T]he age rationale is highly suspect because of its inherent susceptibility to abuse."). However, as the plurality stated in *Hernandez*, "a neutral explanation ... means an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360. The only other characteristic which this definition has been expanded to exclude consideration of is gender. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct.

1419, 128 L.Ed.2d 89 (1994). Further, it is unlikely that the Supreme Court would expand the *Batson* rule to prohibit peremptory challenges based on age. The *Batson* rule is grounded in the Equal Protection Clause of the Fifth and Fourteenth Amendments. However, unlike race and gender, age is not a classification subject to heightened protection under the Equal Protection Clause. *See, e.g., Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 311–12, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

### III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir.1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.